## ROTHCHILD *v.* STATE OF INDIANA.

[No. 24,826.   Filed February 13, 1929.]

*Alexander Belle,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Arnet B. Cronk,* for the State.

MYERS, J.—Appellant was indicted and convicted in the court below of perjury. §2577 Burns 1926, Acts 1905 p. 584, §475.

The evidence adduced at the trial is not before us. The only error assigned necessary for us to consider is the overruling of the motion to quash the indictment, which, in substance, charged that on September 25, 1923, appellant willfully, corruptly, falsely, unlawfully and feloniously did make his voluntary affidavit before Ralph M. Spaan, a notary public, stating that he was the absolute owner in his own right of all the property described in a bill of sale attached thereto, and that there were "no legal or equitable mortgages, liens, rights or claims of any kind outstanding against any of said property. This affidavit is made for the purpose of inducing Ilie Jutariu to purchase said goods." The bill of sale described the property as consisting of stock and fixtures located at 511 W. Washington Street in the city of Indianapolis and used to conduct a poolroom, cigar and soft drink stand; that appellant knew at the time he made the affidavit that the propety described in the "bill of sale was not free from legal and equitable liens, rights and claims, the said Ben Rothchild well knowing at the time said voluntary affidavit was by him made that a certain judgment had been rendered against him" in favor of one Lewis Baum in Room 4, superior court of Marion County, for the sum of $517.56, which judgment had never been satisfied and was then and there in full force and effect, and "constituted a valid lien on said stock and fixtures, as set out in said bill of sale."

Appellant insists that the offense, if any, charged in the indictment, depends upon whether or not the Baum

judgment was a valid lien on his stock and fixtures described in the bill of sale.

A judgment without an execution in the hands of an officer authorized to execute it is not a lien on personal property. §754 Burns 1926; *Richardson* v. *Seybold* (1881), 76 Ind. 58. We must assume that the pleader stated his case as strongly as the facts would warrant. There was no attempt to plead any lien, right or claim outstanding against the property other than that resulting from the judgment. It would seem from the allegations of the indictment that the pleader was under the impression that a valid judgment, as a matter of law, constituted a lien on personalty, but such is not the law. Personal property alone was described in the bill of sale, and which appellant, under oath, declared to be free of all "legal or equitable mortgages, liens, rights or claims of any kind outstanding against any of said property."

Looking to the allegations of the indictment, we would inquire wherein is the affidavit shown to be false? The state answers that the subject-matter of the sale was the stock and fixtures constituting the business of appellant and within the provisions of the Bulk Sales Law (§§8052-8054 Burns 1926, Acts 1909 p. 122, ch. 49), and under this law the judgment creditor had a legal or equitable claim, lien or right in the property, and the seller's affidavit to the contrary is perjury.

There are no facts in the affidavit, bill of sale or the indictment showing or even indicating that either the seller or purchaser of the merchandise and fixtures had any thought of the Bulk Sales Law. The affidavit alleged to be false does not mention or refer to *creditors of appellant,* or use language which would refute the thought of no personal liability of appellant to third persons or even to creditors for merchandise or fixtures, bought by him and included in the bill

of sale. A bulk sale of merchandise and fixtures as in the instant case, is void as against creditors of the seller unless there is a compliance with the Bulk Sales Statute, which charges not only the seller but the purchaser as well with certain duties, that is to say: (1) The seller and purchaser shall, at least five days before consummating the sale, make a full detailed inventory showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller of each article to be included in the sale; (2) the purchaser shall demand and receive from the seller a written list of names and addresses of the creditors of the seller, with the amount of indebtedness due or owing to each, and certified by the seller under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and (3) the purchaser, at least five days before taking possession of such merchandise and fixtures, or paying therefor, shall notify personally or by registered mail every creditor whose name and address is stated in the list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof. The purchaser, failing to conform to the provisions of this statute, shall, upon application of any of the creditors of the seller, become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale. The object of the law evidently is for the protection of the seller's creditors, and, being in derogation of the common law, it must be strictly construed. 12 R. C. L. 525, §54; *Smith* v. *Boyer* (1921), 119 S. C. 176, 112 S. E. 71, 41 A. L. R. 1466; *Blanchard Co.* v. *Ward* (1923), 124 Wash. 204, 213 Pac. 929, 33 A. L. R. 1211; *Nichols, North, Buse Co.* v. *Belgium Cannery* (1925), 188 Wis. 115, 205 N. W. 804, 41 A. L. R. 1211; *Harrison* v. *Riddell* (1922), 64 Mont. 466, 210 Pac. 460. It expressly provides the procedure

to be followed by the purchaser, and his nonconformity therewith makes the transfer invalid at the instance of a creditor and for whose account alone the purchaser holds the property as a receiver. *George Kraft Co.* v. *Heller* (1919), 188 Ind. 612, 125 N. E. 209; *Peck* v. *Hibben* (1916), 185 Ind. 623, 114 N. E. 216. It is noncompliance with the statute that renders the sale voidable and not void, for, as between the parties, the sale is valid with title passing to the purchaser, where it remains until divested by proceedings instituted by any creditor of the seller for that purpose. *Newman* v. *Garfield* (1918), 93 Vt. 16, 104 Atl. 881, 5 A. L. R. 1507; *Douglass-Fir Lumber Co.* v. *Star Lumber Co.* (1921), 27 N. M. 403, 201 Pac. 867, 41 A. L. R. 1474; *Burnett* v. *Trimmell* (1918), 103 Kans. 130, 173 Pac. 6, L. R. A. 1918E 1058.

Hence, we hold that, prior to the consummation of a bulk sale, as here, a judgment creditor, in the absence of an execution in the hands of an officer or other ██ nonlien-holding creditor, has no lien, right or claim by virtue of our Bulk Sales Law against the personal property of the seller. So that the allegation in the indictment that the properties mentioned in the "bill of sale were not free from legal and equitable liens, rights and claims, the said Ben Rothchild well knowing at the time said voluntary affidavit was by him made, that a certain judgment had been rendered against him . . . which has never been satisfied and is in full force and effect," is insufficient to charge an offense within the definition: "Whoever willfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntarily makes any false oath, affidavit or statement of any nature, for any purpose, shall be deemed guilty of perjury." §2577, *supra*.

The court erred in refusing to quash the indictment. Judgment reversed.