In re **SHELL OIL CO., Shell Chemical LP, United States Steel Corp., American Chemistry Council, Exxon Corp., ExxonMobil Oil Corp., Mobil Chemical Co., Inc., Ethyl Corporation and Union Carbide Corporation.**

No. 09–06–195 CV.

Court of Appeals of Texas, Beaumont.

Submitted on June 29, 2006.

Delivered Sept. 14, 2006.

Stephen C. Dillard, Joy Soloway, Brett J. Young, Fulbright & Jaworski LLP, Tynan Buthod, Baker Botts LLP, Reagan W. Simpson, King & Spalding LLP, Houston, for relators.

Allen M. Stewart, Kevin D. McHargue, Denyse F. Clancy, Baron & Budd, PC, Dallas, for real parties in interest.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

PER CURIAM.

Relators Shell Oil Co., Shell Chemical LP, United States Steel Corporation, American Chemistry Council, Exxon Corporation, ExxonMobil Oil Corporation, Mobil Chemical Company, Inc., Ethyl Corporation, Union Carbide Corporation, and Radiator Specialty Company seek a writ of mandamus compelling the trial court to vacate its order consolidating two cases for trial. We conditionally grant mandamus relief.

### BACKGROUND

Along with other plaintiffs, real parties in interest Herbert W. Wilkinson, Peggy S. Hebert (Wilkinson's wife), and Maureen Ann Stubbs, individually and as Personal Representative of the Heirs and Estate of Ben Louis Stubbs, Deceased, sued relators and other defendants. In paragraph 23 of their live petition, real parties in interest contend that Ben L. Stubbs and Herbert W. Wilkinson contracted cancer as a result of occupational exposures to "toxins and carcinogens, including, but not limited to benzene, benzene[-]containing products, paints, coatings, thinners, solvents, naptha, toluene, xylene, styrene, butadiene, and butadiene-containing products ... designed, produced, manufactured, processed, used, maintained, sold, marketed, and/or distributed by defendants...." However, in subsequent parts of the petition, real parties in interest confine their claims to injuries resulting from exposure to benzene, benzene-containing products, and organic solvents. Real parties in interest assert causes of action for negligence, strict liability, breach of warranty, misrepresentation, conspiracy, gross negligence, and concert of action.

Relators and other defendants filed a motion to sever, and the trial court entered an order severing the plaintiffs' claims into separate lawsuits. Real parties in interest subsequently filed a motion to consolidate, and the trial court entered an order consolidating the Stubbs and Wilkinson claims for trial. Relators then filed this petition for writ of mandamus.

### AVAILABILITY OF MANDAMUS RELIEF

██ An appellate court may issue a writ of mandamus when the trial court has abused its discretion and the relator lacks an adequate remedy on appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court has no discretion in determin-

ing what the law is or applying the law to the facts. *Id.* at 840. "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.* With respect to whether an appellate remedy is adequate, "adequate" "has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex.2004).

 Mandamus review of trial courts' incidental interlocutory rulings unduly interferes with trial court proceedings, diverts appellate courts' attention to unimportant issues, and adds to the expense and delay of civil litigation. *Id.* However, "[m]andamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.* The Supreme Court has explained that an appellate remedy is adequate when the benefits to mandamus review are outweighed by the detriments. *Id.* Because a consolidation order usually does not threaten a defendant's substantial rights, mandamus typically does not lie from a trial court's consolidation order; however, if an ordinary appeal is inadequate because extraordinary circumstances exist, mandamus relief may be appropriate. *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 211 (Tex.2004).

## THE CLAIMS

Ann Stubbs's interrogatory responses indicate that from 1974 to 2001, Ben Stubbs worked as a contract employee for numerous employers at various locations. Stubbs's worksites included Exxon Plant in Baytown; Tenneco Plant in Pasadena; Shell Oil Refinery in Deer Park; Atlantic Richfield in Houston, Channelview, and Pasadena; Global; Rohm & Haas in Deer Park; BP Amoco; Ethyl Plant; Chevron Plant; and Mobay Plant. Stubbs's various trades included iron worker, equipment operator, pipefitter, fab helper, boilermaker, and rigger. Stubbs was diagnosed with small cell lymphoma (also known as chronic lymphocytic leukemia), a type of non-Hodgkin's lymphoma, and he died on December 8, 2003, at age 49.

Wilkinson's answers to interrogatories state that from 1971 to 1990, he worked as a contract employee for numerous employers at various job sites. Wilkinson's worksites included Exxon Oil Refinery in Baytown, Ethyl Corp. in Pasadena, Shell Chemical in Deer Park, Monsanto Chemical in Chocolate Bayou, Merichem Refinery in Winnie, American Hoist, Mobay/Bayer, Amoco Refinery in Texas City, Union Carbide Chemical Plant in Texas City, Monsanto Chemical Plant in Texas City, Crown Petroleum Plant in Pasadena, Dixie Chemical Plant in Bayport, Pak Tank in Pasadena, Arco Company in Channelview, Lyondell Chemical in Channelview, Goodyear in Pasadena, and Rohm & Haas in Deer Park. Wilkinson's trades included painter, pipefitter, and boilermaker, but the majority of his employment history consists of work as a pipefitter and boilermaker. According to Wilkinson, he was exposed to benzene by inhaling fumes and via dermal absorption.

Wilkinson was diagnosed with Hodgkin's lymphoma in 1986. However, in 1993, Wilkinson was diagnosed with large B-cell

lymphoma, a type of non-Hodgkin's lymphoma. Wilkinson underwent treatment, and his disease has been in remission for ten years. Relators contend Wilkinson's disease is different from that of Stubbs, but real parties in interest assert that both suffer from essentially the same disease.

Relators contend that Wilkinson and Stubbs "worked in many different units in separate and unrelated facilities. With maybe one exception, they never worked at the same facility at the same time." Relators also assert that many of the facilities "are enormous, and employ thousands of contractors on thousands of jobs in different parts of integrated sites." According to a document prepared by relators, the industrial hygiene expert hired by real parties in interest alleged that Stubbs was exposed to benzene at Lyondell and BP/Amoco, but Wilkinson was not, and Wilkinson was exposed to benzene at Union Carbide, but Stubbs was not.[1] Real parties in interest respond that both men "worked as boilermakers and pipefitters at the Exxon Baytown facility for many years in the 1970's and 1980's." Real parties in interest state that while at Exxon, both men worked in "several" units that contained benzene. Real parties also assert that both Wilkinson and Stubbs used a benzene-containing product called Liquid Wrench while working at Exxon. Real parties in interest further state that while working at the Shell refinery in Deer Park, Wilkinson and Stubbs worked in units containing benzene. The response of real parties in interest to the petition for writ of mandamus does not specify the precise locations, if any, at which Wilkinson and Stubbs worked at the same time.

CONSOLIDATION

 Rule 174 of the Texas Rules of Civil Procedure provides as follows:

1. Stubbs has non-suited Union Carbide.

(a) **Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Tex.R. Civ. P. 174(a). Although Tex.R. Civ. P. 174 gives the trial court broad discretion to consolidate cases, the trial court's discretion is not unlimited. *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 683 (1956).

> The express purpose of the rule is to further convenience and avoid prejudice, and thus promote the ends of justice. When all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby, there is no room for the exercise of discretion.... If it also appears that the injustice resulting from such refusal cannot later be remedied on appeal, the action of the court is subject to control by mandamus.

*Id.* Courts must balance the judicial economy and convenience that may be gained by consolidation against the possibility that consolidation may cause delay, prejudice, or jury confusion. *Dal–Briar Corp. v. Baskette*, 833 S.W.2d 612, 615 (Tex.App.-El Paso 1992, no writ). "If the convenience factors are substantially outweighed by the risk of an unfair outcome because of prejudice or confusion, then the trial court abuses its discretion in granting consolidation." *Id.* at 616. The dominant consideration is whether the trial will be fair and impartial

to all parties. *In re Ethyl Corp.,* 975 S.W.2d 606, 614–15 (Tex.1998). In *Ethyl,* the Supreme Court adopted the Maryland factors to aid courts in determining whether consolidation of claims is likely to prejudice or confuse the jury. *Id.* at 614. The Maryland factors include: "(1) common worksite; (2) similar occupation; (3) similar time of exposure; (4) type of disease; (5) whether plaintiffs were living or deceased; (6) status of discovery in each case; (7) whether all plaintiffs were represented by the same counsel; and (8) type of cancer alleged." *Id.* at 611. The Supreme Court cautioned that there is no mathematical formula for determining the number of claims that may be properly consolidated, and some of the Maryland factors should be given more weight than others. *Id.*

 In addition to the Maryland factors, trial courts should consider the maturity of the alleged tort. *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 208 (Tex. 2004). A tort is considered mature when there has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs' contentions. *Id.* Trial courts should "proceed with extreme caution" when consolidating claims involving immature torts. *In re Bristol–Myers Squibb Co.,* 975 S.W.2d 601, 603 (Tex. 1998).

 The first Maryland factor, common worksite, weighs against consolidation because Wilkinson and Stubbs worked largely at different sites and multiple worksites are at issue. *See Ethyl,* 975 S.W.2d at 615. Furthermore, because Wilkinson and Stubbs were both employed by independent contractors, the necessary factual inquiries become more complex. *See id.* The second factor, similar occupations, likewise favors separate trials. Both Wilkinson and Stubbs worked as a pipefitter and boilermaker. However, Stubbs

also worked as an iron worker, equipment operator, fab helper, and rigger. Stubbs worked for approximately twenty-seven years, while Wilkinson worked for nineteen years. Furthermore, the record contains evidence that the benzene exposure levels of Wilkinson and Stubbs differed.

Real parties in interest contend Wilkinson and Stubbs suffered from the same disease; however, relators contend Wilkinson suffered from Hodgkin's lymphoma rather than non-Hodgkin's lymphoma. While we express no opinion about the medical evidence, we find that the existence of a dispute regarding whether real parties in interest had the same type of cancer weighs against consolidating the claims. *See generally Ethyl,* 975 S.W.2d at 616. Additionally, Wilkinson is alive and his disease has been in remission for ten years, but Stubbs is deceased. As the Supreme Court noted in *Ethyl,* "[s]ome courts have expressed concern that permitting the consolidation of claims by living workers with claims of the families of deceased workers would unduly prejudice the trial because there is a danger that the claims regarding deceased workers or those who have life-ending diseases will boot-strap the claims of workers who do not have fatal conditions[.]" *See id.* The *Ethyl* court also pointed out that this concern has "considerable force" when the types of diseases suffered by the workers vary and it is disputed whether these diseases will result in death. *See id.* Therefore, we conclude this factor weighs against consolidation. The remaining Maryland factors (status of discovery and whether same counsel represents both plaintiffs) are undisputed and favor consolidation. *See id.* However, these factors receive much less weight than the others. *See id.; Van Waters,* 145 S.W.3d at 211. Considering the dispute over causation and the level of development of this litigation,

the trial court was required to proceed with extreme caution when considering consolidation. *Compare Ethyl,* 975 S.W.2d at 610 (asbestos litigation).

### CONCLUSION

■ In this case, the medical evidence is disputed. In addition, Wilkinson and Stubbs have fairly diverse work histories, Stubbs's work history is significantly longer than Wilkinson's, and Stubbs's estimated exposure to benzene is greater than Wilkinson's. Furthermore, Wilkinson's disease ha been in remission for ten years, but Stubbs is deceased. Most of the Maryland factors weigh against consolidation, and the two factors that favor consolidation receive less weight than the others. *Ethyl,* 975 S.W.2d at 616; *Van Waters,* 145 S.W.3d at 211. The dominant consideration must be whether a consolidated trial will be fair and impartial to all parties. *See Ethyl,* 975 S.W.2d at 614–15. Consolidation should not be used if it will unfairly affect the outcome. *See generally Dal–Briar Corp.,* 833 S.W.2d at 616. We conclude the trial court abused its discretion by consolidating the cases for trial, and relators lack an adequate appellate remedy. *See generally Van Waters,* 145 S.W.3d at 211 (Mandamus relief was appropriate because an appellate court could not remedy the likely juror confusion resulting from a consolidated trial, and any advantage gained in judicial economy or avoidance of repetitive costs was "overwhelmed by the greater danger an unfair trial would pose to the integrity of the judicial process.").

The petition for writ of mandamus is conditionally granted. The writ will issue only if the trial court does not vacate its consolidation order in accordance with this opinion.

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED.